**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**
**THIRD DIVISION**

---

LIBERTY MUTUAL, ET AL.,

Plaintiffs,

Civil No. 01-654 AJB

**ORDER ON MOTION FOR SUMMARY JUDGMENT**

v.

MINNESOTA POWER, INC.,

Defendant.

---

This matter is before the Court, Magistrate Judge Arthur J. Boylan, on Defendant's Motion for Summary Judgment. [Docket No. 16]. The claims arise out of damage to the Hennepin Paper facility caused by water that broke through the dam at Little Falls on May 15, 1999. The dam is under the control of Defendant Minnesota Power, Inc. Plaintiffs' Complaint alleges that Defendant was negligent in its design, construction, maintenance and operation of the dam at Little Falls. The Complaint further alleges that Defendant should be held strictly liable for damage caused when the dam failed because Defendant's design, construction, maintenance and operation of the dam created abnormally dangerous conditions.

A hearing was held on October 8, 2002, at the U.S. Courthouse, 316 North Robert St., St. Paul, MN 55101. John C. Hart, Esq., Bruce H. Rogers, Esq., Thomas R. Thibodeau, Esq., and David M. Johnson, Esq., appeared on behalf of Plaintiffs. James A. Wade, Esq., and Roy J. Christensen, Esq., appeared on behalf of the Defendant. The parties have voluntarily consented to exercise of jurisdiction by United States Magistrate Judge pursuant to 28 U.S.C. 636(c) and Fed. R. Civ. P. 73.

FILED DEC 11 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

Based upon the file and documents contained therein, along with the memoranda and arguments of counsel, **IT IS HEREBY ORDERED THAT:**

1. Defendant's Motion for Summary Judgment is **granted** in part and **denied** in part, as detailed below. [Docket No. 16].

2. Summary judgment in favor of Defendant is **granted** on Plaintiffs' strict liability claim.

3. Summary judgment in favor of Defendant is **denied** on Plaintiffs' negligence claims.

Dated: 12/11/02

Arthur J. Boylan
United States Magistrate Judge

## MEMORANDUM

Minnesota Power owns and operates a hydroelectric power plant upriver from the Hennepin Paper plant. It also owns and operates Little Falls Dam, which regulates the flow of the Mississippi River to provide water to generate hydroelectric power. After passing through the dam, water flows into a canal, through the Hennepin Paper plant and out into the river again.

The canal has three separate gates which could be used to close off the flow of water through the mill and back to the Mississippi. The first gate, the "bridge gate," is located at the head of the canal adjacent to Minnesota Power's dam. This gate was closed

historically only to allow repairs to the canal between it and the second gate. The second gate, or "mill gate," is approximately twenty yards upstream from the paper mill. The third gate is located in the paper mill and is referred to as the bulkhead gate.

The facts, as alleged by Plaintiffs, are as follows. Minnesota Power is the owner and operator of Little Falls Dam, a set of structures built across the Mississippi River to hold back water for use in Minnesota Power's hydroelectric power plant. The water then flows through the dam and provides water to a paper mill formerly operated by Hennepin Paper Company. Minnesota Power has exclusive control of the Bridge Gates. When the Bridge Gates are closed, all water flow into the canal is shut off.

Hennepin Paper Company shut down the paper plant in December 1998. When Hennepin Paper went out of business, Banc of America Commercial Finance Corporation foreclosed on the personal property located at the paper plant. On May 15, 1999, before the Bank was able to sell the personal property, high water conditions at the Little Falls Dam raised the water level in the canal to such a high level that the canal overflowed. The subsequent flood of water through the paper plant caused damage for which the Plaintiffs, as the Bank's property insurers, were obliged to make payment under their insuring agreements with the Bank.[1]

Plaintiffs allege two causes of action: negligence and strict liability. Plaintiffs argue that Minnesota Power, as the operator of the Little Falls Dam, had a continuing duty to the Plaintiffs to exercise care commensurate with the danger in operating the dam

---

[1] On May 16, 1999, Minnesota Power closed the Bridge Gates, shutting off the flow of water to the canal and stopping further flooding to the Mill.

and failed to do so on May 15, 1999. Also, the Plaintiffs maintain that Minnesota Power is strictly liable for the damages because the dam was under Defendant's exclusive control and the damage was foreseeable.

Additionally, Plaintiffs argue that the flashboards, installed on the dam and intended to prevent the water behind the dam from reaching an excessive level, were defective and that Minnesota Power's operation of the dam and failure to close the bridge gates caused the damage to the personal property at the mill.

Minnesota Power moved for summary judgment. It contends that it had no duty to prevent the natural flow of the Mississippi River from reaching the Hennepin Paper facility. Minnesota Power also argues that it did not cause the water to flow into Hennepin Paper. It maintains that because the flooding was unforeseeable, it used reasonable care as a matter of law. Further, Minnesota Power alleges that owners and operators of dams are held to the negligence standard and are not strictly liable in tort for dam operations.

**Summary Judgment Standard**

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party "has the burden of showing the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law." Enterprise Bank v. Magna Bank, 92 F.3d 743, 747 (8th Cir. 1996). This Court must "view the evidence in the light most favorable to the nonmoving party, and give the nonmoving party the benefit of all

reasonable inferences to be drawn from the evidence." Adkison v. G.D. Searle & Co., 971 F.2d 132, 134 (8th Cir. 1992).

When a motion for summary judgment has been made and supported by the pleadings and affidavits as provided in Rule 56 (c), the burden shifts to the party opposing the motion to proffer evidence demonstrating that a trial is required because a disputed issue of material fact exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). A party opposing a properly supported motion for summary judgment cannot simply rest on allegations and denials in his pleadings to get to the jury without any significant probative evidence tending to support the complaint. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). It "must do more than simply show that there is some metaphysical doubt as to the material facts." Masushita, 475 U.S. at 586.

**Negligence**

Plaintiffs allege negligence claims against Defendant. Minnesota Power argues that summary judgment should be granted in its favor on the negligence claims because it owed no duty to Plaintiffs to halt the natural flow of the Mississippi River. It also argues that, in any event, it satisfied the standard of care because it operated the dam in the same manner that it had for over 100 years.

Both parties agree that Minnesota Power has a duty to construct, maintain and operate its dam with care commensurate with the danger involved in such an operation. City Water Power Co. v. City of Fergus Falls, 128 N.W. 817, 818 (Minn. 1910). Minnesota Power nevertheless argues that it has no duty to hold back the natural flow of

the river. It relies on Chabot v. City of Sauk Rapids, 422 N.W.2d 708, 711 (Minn. 1988), and Roche v. City of Minneapolis, 27 N.W.2d 295, 298 (Minn. 1947).

In Chabot, Plaintiff lived in a home located across the street from a natural ditch which functioned as a holding-pond in the defendant City of Sauk Rapids' storm sewer drainage system. 422 N.W.2d at 709. The holding pond was not created by the city and the city had not diverted the flow of the water from its natural course but the contours of the land appeared to naturally direct the flow of surface water across the Plaintiff's property. Id. The pond had not flooded in sixty-six years, however, in an extremely heavy rainstorm, the holding pond overflowed and damaged Plaintiff's property. Id.

Although the court recognized that the defendant city had a duty to exercise reasonable care to maintain its facilities in a safe condition, it found that duty did not apply to the facts in the case. Id. at 710. The court, relying on Roche v. City of Minneapolis, 27 N.W.2d 295 (1947), held that the city was not liable for water damage to private property despite the inadequacy of its drainage system, when the private property was the natural depository of the water discharged. Id. at 711. The court reasoned that a city has never been required to install a sewer system or to install a system that is adequate to take care of all water. Id. The court stated, "[i]n other words, while there is a duty to repair and maintain, there is no duty to build." Id. at 712.

Chabot and Roche are not on point. In both cases, the defendant had not built a system that discharged surface water upon the plaintiff's land but the plaintiffs had built their homes in an area that was a natural dumping ground for the flow of surface water. Roche, 27 N.W.2d at 297. In contrast, a dam is a barrier constructed across a waterway

to control the flow or raise the level of water, and in this instance used to power a hydroelectric plant. Unlike the storm sewer systems in Roche and Chabot, a dam owner has built a structure that can, to some extent, control the natural flow of the river. Plaintiffs allege that Defendant, by leaving its bridge gates open during heavy rain, discharged water that would not have flowed if the gates had been closed.

In City Water Power Co. v. City of Fergus Falls, 128 N.W. 817 (1910), the court considered whether riparian owners of dams across natural water courses should be strictly liable for damage caused by water flowing through the dam in the same way that the builder of a reservoir was subject to absolute liability when the reservoir gave way and water from the reservoir escaped and caused damage to nearby property. The Court recognized that the use of the water of rivers by a dam owner is not an unnatural use and does not involve the bringing upon the owner's premises that which does not naturally belong there. Id. at 818. Thus, the court ruled that absolute liability should not be imposed. Id.

However, the court recognized that riparian owners of dams owe a duty of care to third persons with respect to construction and maintenance of the dam. Id. The court stated, "[t]he dam should be sufficient to resist, not merely ordinary freshets, but such extraordinary floods as may be reasonably anticipated." Id. (citations omitted). Thus, the court held "that the erection and maintenance of a dam in a natural water course by a riparian owner for the purpose of utilizing water power is not a nuisance, and that the owner thereof is not an insurer of its safety, but he is bound to exercise, in its construction and maintenance, a degree of care proportionate to the injuries likely to result to others if

it proves insufficient." Therefore, the issue in this case is not whether defendant had a duty to hold back the natural flow of the river but whether defendant breached its duty of care in the construction, maintenance and operation of its dam. Willie v. Minnesota Power & Light Co., 250 N.W. 809 (1933).

Minnesota Power argues that, even if it has a duty to Plaintiffs, it satisfied the standard of care because (1) it operated the dam in the same way it had for over 100 years and (2) the Federal Energy Regulatory Commission (FERC) approved the dam, including the flashboards. Plaintiffs contend that Defendant did not operate the dam with care commensurate with the danger because Minnesota Power could have closed the bridge gates and prevented water from flooding the paper plant. They further argue that FERC's approval does not address whether the flashboards would provide overflow protection for the canal and might have included the assumption that a reasonably prudent dam operator would have closed the bridge gates in a high water event to prevent the canal from overflowing and flooding the paper plant.

These are both reasonable inferences in favor of Plaintiffs that preclude summary judgment. Whether a reasonable dam owner would have closed the bridge gates to protect against flooding is a material question of fact. "The question of negligence is usually one of fact and not one of law." Colorado Milling & Elevator Co. v. Terminal R.R. Association of St. Louis, 350 F.2d 273, 277 (8th Cir. 1965). Therefore, whether Minnesota Power met its standard of care for operating the dam is a question of fact that must be resolved by the trier of fact.

Defendant also argues that the overflow of the canal was unforeseeable. Minnesota Power points to evidence that no one feared a canal washout. In contrast, Plaintiffs contend that the damage was foreseeable. They argue that flooding of the canal has occurred in the past and damage had been averted only because Hennepin Paper employees sandbagged the canal. In any event, the foreseeability of the flooding is also a question for the jury. See Willie, 205 N.W. at 811. Whether individual circumstances are so great that they could not reasonably have been anticipated and guarded against in the exercise of due care is a question of fact for the jury. Id.

**Strict Liability**

Minnesota Power argues that this Court should grant summary judgment on Plaintiffs' claim that Defendant is strictly liable for the dam failure. It contends that strict liability is not available in this case as a matter of law. Although Minnesota law imposes strict liability in certain instances of damage from water flowing onto the property of another, this is not such an instance.

"A party who, for his own profit, keeps on his premises anything not naturally belonging there, *the natural tendency of which is to become a nuisance, and to do mischief if it escapes,* is liable if it escapes, without proof of negligence, for all damages directly resulting therefrom." Wiltse v. City of Red Wing, 109 N.W. 114, 115 (Minn. 1906) (emphasis in original). In Wiltse, the defendant had constructed a reservoir on its land and stored 800,000 gallons of water for waterworks 150 feet about the plaintiff's property. Id. at 114. The reservoir gave way and flooded plaintiff's property, causing damages. Id.

In City Water Power, 128 N.W. at 818, the Minnesota Supreme Court distinguished the unnatural reservoir in Wiltse from the construction of dams across water courses. The Court said that the use of dams to utilize water powers "is not an unnatural or unusual use, but the contrary." Id. As discussed above, the court held that "the erection and maintenance of a dam in a natural water course by a riparian owner...is not an insurer of its safety, but he is bound to exercise, in its construction and maintenance, a degree of care proportionate to the injuries likely to result to others if it proves insufficient." Id. Therefore, the negligence standards apply here, where Defendant owned and operated a dam across the Mississippi River. Defendant's Motion for Summary Judgment shall be granted on Plaintiffs' strict liability claim.

**Conclusion**

Minnesota Power owed Plaintiffs a duty to operate its dam commensurate with the danger involved in such an operation. Whether Minnesota Power satisfied that duty is a question for the jury. Minnesota Power has not shown that Plaintiffs' negligence claims fail as a matter of law. There remain reasonable inferences in favor of the Plaintiffs and questions of fact that must be decided by a trier of fact. Summary judgment is not appropriate on Plaintiffs' negligence claims.

In contrast, Plaintiffs' strict liability claim fails because it is not available in this case under Minnesota law. The strict liability claim does not survive summary judgment.

AJB